### LAMB *v.* LAMB.

1. Boundaries — Actual Location — Agreement for Survey — Question for Jury.

  On an issue as to the location of a boundary line, evidence examined and *held*, that it was a question for the jury whether plaintiff had agreed, before he had occupied up to the actual boundary for more than 15 years, to have the line fixed by a survey.

2. Same—Instructions.

  In ejectment, involving the location of a boundary line, the evidence was conflicting as to whether plaintiff had agreed with defendant, at a time before plaintiff had occupied up to the fence for more than 15 years, that the line should be fixed by a survey; and the court charged that unless the jury found that the land claimed by plaintiff was occupied up to the fence, as a line claimed by plaintiff's grantors and defendant, for more than 15 years, and that there was no agreement that the fence was maintained at any other place than the true line, the line would not be fixed by adverse possession. *Held*, that the instruction could not have been misunderstood, and was sufficiently favorable to defendant.

3. Same—Oral Agreement for Survey—Statute of Frauds.

  Where one occupied up to a certain boundary line under a claim of ownership for more than 15 years, an oral agreement to have the line surveyed could not affect his title up to the line to which occupation was had.

4. EJECTMENT—OUSTER—PLEADING.

In ejectment, involving the location of a boundary line, the plea alleged an agreement to fix a boundary line, and that defendant, in reliance on the agreement, entered on the lands occupied by the owner of the lands described in the declaration, for the purpose of erecting a fence on the boundary line as located by the survey. *Held,* that plaintiff had a right to treat such entry under claim of right as an ouster and that an objection that the evidence failed to show an ouster was not available to defendant.

5. ACKNOWLEDGMENTS—CERTIFICATE—AUTHORITY OF NOTARY.

Where the caption of an acknowledgment showed that it was taken in the county of Calhoun, State of Michigan, and the notary's name was followed by the words, "Notary Public in and for Eaton Co.," it was not objectionable on the ground that it did not show that the notary was one for Eaton county, Mich.

6. SAME.

Under the statute, a notary public of one county may take acknowledgments in another.

7. TENANCY IN COMMON—RECOVERY BY ONE AGAINST STRANGER.

Though the deed to plaintiff in ejectment from several tenants in common was not properly executed by some of them, he was, as against defendant, who had no interest, entitled to recover the entire premises, under Act No. 55, Pub. Acts 1903.

Error to Calhoun; Hopkins, J. Submitted January 19, 1905. (Docket No. 78.) Decided February 27, 1905.

Ejectment by Charles R. Lamb against Sanford Lamb. There was judgment for plaintiff, and defendant brings error. Affirmed.

*John C. Patterson* and *Harley J. Cortright,* for appellant.

*Hatch & Page,* for appellee.

MONTGOMERY, J. This is an action of ejectment to recover a strip of land claimed by plaintiff to be a portion of his farm, adjoining defendant's land; the defendant claiming that the land in dispute in fact belongs to his farm. The dispute is determined when the true boundary line is

ascertained. The jury found for plaintiff, and defendant brings the case here; alleging error committed in rulings in relation to the admissibility of evidence, in the charge as given, and in the court's refusal to direct a verdict.

The testimony shows that as early as 1859 to 1861 (the precise date is not fixed) the defendant and plaintiff's predecessor in title, Mrs. Snyder, joined in building a fence, and that there was no dispute about that fence being on the line until 1894. That fence still remains. From the time of its construction up to the date of the controversy, at some date after 1894, the two parties occupied up to the line of this fence, and remained in undisturbed possession. Moses Moist succeeded to the title of Mrs. Snyder, and continued to occupy and cultivate up to this line, and remained in undisturbed possession until his death. The defendant was permitted to testify that he had an agreement with Moist that the line should be established by a survey, and it is therefore argued that the possession of Moist was not adverse. The defendant does not fix the time of this alleged agreement with Moist, but in view of his statement in another place, "Until 1894 there wasn't any dispute about that being the line, not until Moist got it," it is manifest that it was a question for the jury as to whether the agreement, if any, was made at a date which would color the possession of plaintiff's predecessors during the time the statute of limitations was claimed to be running. There is no doubt as to the character of the occupancy, except such as arises out of the claim of an agreement which characterized the possession of plaintiff's grantors. The circuit judge charged, in substance, that unless the jury found that the land now claimed by plaintiff was occupied up to this fence, as a line claimed by plaintiff's grantors and defendant, for more than 15 years, and should also find that there was no agreement that the fence was maintained at any other place than the true line, the line would not be fixed by adverse possession. This instruction could not have been misunderstood by the jury, and was sufficiently favorable to the defendant.

In what we have said, we must not be understood as affirming the admissibility of the defendant's testimony in this case as against the objection of plaintiff's attorney that it should be excluded under the statute (section 10212, 3 Comp. Laws). What we hold is that, assuming his testimony to be competent, the construction of the evidence as a whole was for the jury, and left it open for the jury to find that there had been an occupancy under a claim of ownership up to this line for more than 15 years before any question was raised by defendant. If this was the fact, something more than an agreement to have a survey made would be necessary, to divert the title of plaintiff's grantors. *Burns* v. *Martin*, 45 Mich. 25.

It is claimed that the evidence fails to show an ouster by defendant, and that the action cannot be maintained for this reason. We do not think this objection open to the defendant under the pleadings. In some jurisdictions the plea of not guilty admits possession by the defendant. 7 Enc. Pl. & Prac. 341. While this may not be the effect of a plea of general issue under our practice, yet it is settled by our decision in *Carpenter* v. *Carpenter*, 119 Mich. 167, that an ouster may be admitted by the pleadings. The pleadings will be scanned to ascertain whether the plea admits or assumes the defendant's possession. In this case the plea sets out an agreement to fix a boundary line which should thereafter remain the permanent boundary line between the parties, and states that defendant, relying upon said agreement, did enter upon the lands occupied by the owner of the lands described in the plaintiff's declaration for the purpose of erecting a fence upon the boundary line between the said lands and the lands owned by defendant, as located by said survey, as he lawfully might do. There was evidence of an attempt to construct a fence on a new line by defendant. Plaintiff had the right to treat this as an ouster. The plea makes it manifest that defendant's entry was under a claim of right. See 21 Am. & Eng. Enc. Law (2d Ed.), p. 1018; 6 Am. & Eng. Enc. Law, p. 245.

It is next claimed that plaintiff failed in proving title to himself. Plaintiff offered a certified copy of a deed from the heirs of Moses Moist, with the following acknowledgment:

"STATE OF MICHIGAN, COUNTY OF CALHOUN—SS.:

"On this third day of December, in the year one thousand nine hundred and one before me, a Notary Public in and for Eaton County, personally appeared William H. Moist, Margaret C. Moist, Harvey Moist, Adaline B. Moist, Margaret Kimler, Ella G. Moist, Isabelle Phillips, Mary A. Cortwright, Lucinda De Peel, to me known to be the same persons described in and who executed the within instrument, who severally acknowledged the same to be their free act and deed.

"ISAAC N. GILMAN,
"Notary Public in and for Eaton Co."

This was objected to for the reason that the certificate does not show that the notary was a notary public for Eaton county, Mich. Under the statute, a notary public of one county may take acknowledgments in another. He is, in effect, a notary of such other county for the occasion. This certificate indicates that in Calhoun county, Mich., one assuming to act as a notary public took this acknowledgment. If he had subscribed his name as notary public, it would have been sufficient. *Smith* v. *Runnells*, 94 Mich. 617; *Wright* v. *Wilson*, 17 Mich. 199.

It is next objected that, as to certain heirs named in the deed, they assumed to act by attorney, whose powers were not shown to be broad enough to authorize the conveyance. If this be granted, the conveyance was good as to some of the grantors, and the objection is rendered unavailing by Act No. 55, Pub. Acts 1903.

The rulings in admitting testimony and in rejecting offered testimony have been fully considered, and no error is found. The case was fairly presented to the jury, an apparently just verdict rendered, and the judgment is affirmed.

MCALVAY, GRANT, BLAIR, and OSTRANDER, JJ., concurred.